# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| LORENZO COLUCCI, and VIENNA COLUCCI, on behalf of themselves and all others similarly situated, | : : : : | Civil Action No. 1:19-cv-08379 |
| Plaintiffs, | : : : | |
| v. | : : : | |
| WHOLE FOODS MARKET SERVICES, INC., and WHOLE FOODS MARKET PACIFIC NORTHWEST, INC. | : : : : : | |
| Defendants. | : : | |

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>DEFENDANT'S MOTION TO DISMISS THE COMPLAINT</u>

Danny Worker
LEWIS BRISBOIS BISGAARD & SMITH LLP
550 West Adams Street, Suite 300
Chicago, IL 60661
Tel: (312) 407-9921
Email: Dan.Worker@lewisbrisbois.com
 *and*
J.T. Wells Blaxter
(admitted *pro hac vice*)
BLAXTER | BLACKMAN LLP
601 California Street, Suite 1505
San Francisco, CA 94108
Tel: (415) 500-7700
Email: wblaxter@blaxterlaw.com
*Attorneys for Defendant*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................................................1

II.    SUMMARY OF RELEVANT ALLEGATIONS & FACTS ............................................2

    A.    Plaintiffs' Allegations. ..........................................................................2

    B.    Claims and Procedural History. ...........................................................3

III.    LEGAL ARGUMENT..............................................................................................3

    A.    The Court Lacks Personal Jurisdiction Over WFMS. .............................3

        1.    Statutory and Constitutional Principles Governing Personal
Jurisdiction....................................................................................3

        2.    WFMS Is Not Subject to the Court's General Jurisdiction. .......................4

        3.    WFMS Is Not Subject to the Court's Specific Jurisdiction. .......................5

    B.    Plaintiffs Lack Article III Standing..........................................................6

        1.    Plaintiffs Fail to Allege Any Concrete and Particularized Injury..............7

        2.    Plaintiffs' Allegations of Economic Injury Fail to Establish
Injury in Fact................................................................................8

    C.    Plaintiffs' Claims Should be Dismissed Because They Are Expressly
Preempted. ......................................................................................10

    D.    The Complaint Fails to Allege Plausible Claims for False or Misleading
Advertising.......................................................................................12

        1.    The Complaint Does Not Allege an Actionable Statement
Specific to SSW .........................................................................12

        2.    Plaintiffs Have Not Shown A Reasonable Consumer Is Likely to Be
Deceived ....................................................................................13

        3.    Plaintiffs' ICFA Claim Is Barred by the FDA's Safe Harbor..................15

    E.    Plaintiffs Do Not Have Standing to Obtain Injunctive Relief. .............15

IV.    CONCLUSION...................................................................................................15

i

## TABLE OF AUTHORITIES

### FEDERAL CASES

*62 Cases, More or Less, Each Containing Six Jars of Jam v. U.S.*
340 U.S. 593 (1951) ............................................................ 10

*Abelesz v. OTP Bank*
692 F.3d 638 (7th Cir. 2012) .............................................. 4

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*
751 F.3d 796 (7th Cir. 2014), as corrected (May 12, 2014) ............................................. 6

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ............................................................ 12

*Barbara's Sales, Inc. v. Intel Corp.*
227 Ill. 2d 45 (2007) .......................................................... 14

*Bell Ad. Corp. v. Twombly*
550 U.S. 544 (2007) ............................................................ 12

*Bober v. Glaxo Wellcome PLC*
246 F.3d 934 (7th Cir. 2001) ...................................... 13, 15

*Books v. City of Elkhart, Ind.*
235 F.3d 292 (7th Cir. 2000) .............................................. 7

*Boysen v. Walgreens, Inc.*
2012 WL 2953069 (N.D. Cal. Jul. 19, 2012) ...................... 9

*Burger King Corp. v. Rudzewicz*
471 U.S. 462 (1985) ............................................................ 5

*Camasta v. Jos. A. Bank Clothiers, Inc.*
761 F.3d 732 (7th Cir. 2014) ...................................... 13, 15

*Chicago Faucet Shoppe, Inc. v. Nestle Waters N. Am. Inc.*
24 F. Supp. 3d 750 (N.D. Ill. 2014) ................................. 11

*Daimler AG v. Bauman*
571 U.S. 117 (2014)............................................................ 4

*Emerald Coast Utils. Auth. v. 3M Co.*
746 F. Supp. 2d 1216 (N.D. Fla. 2010) ........................... 10

*Felland v. Clifton*
  682 F.3d 665 (7th Cir. 2012) .............................................................. 4

*Frye v. L'Oreal USA, Inc.*
  583 F. Supp. 2d 954 (N.D. Ill. 2008) .................................................. 9

*Gaminde v. Lang Pharma Nutrition, Inc.*
  2019 WL 1338724 (N.D.N.Y. Mar. 25, 2019) .................................... 8

*Goodyear Dunlop Tires Operations v. Brown*
  564 U.S. 915 (2011) ............................................................................. 4

*Herrington v. Johnson & Johnson Consumer Cos.*
  2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) ...................................... 9

*Hughes v. Chattem, Inc.*
  818 F. Supp. 2d 1112 (S.D. Ind. 2011) ............................................... 9

*Iberville Parish Waterworks Dist. No. 3 v. Novartis Crop Prot., Inc.*
  45 F. Supp. 2d 934 (S.D. Ala. 1999), *aff'd*, 204 F.3d 1122 ............... 10

*In re Fruit Juice Prods. Mktg. and Sales Practices Litig.* ("*In re Fruit Juice*")
  831 F. Supp. 2d 507 (D. Mass. 2011) ............................................. 8, 9

*In re PepsiCo, Inc., Bottled Water Mktg. & Sales Practices Litig.*
  588 F. Supp. 2d 527 (S.D.N.Y. 2008) .............................................. 11

*In re: Whole Foods Market, Inc.*
  163 F. Supp. 3d 385 (W.D. Tex. 2016) ............................................. 11

*Int'l Shoe Co. v. Washington*
  326 U.S. 310 (1945) ............................................................................. 4

*Jacobs v. Osmose, Inc.*
  No. 01-944-CIV, 2002 U.S. Dist. LEXIS 1926 (S.D. Fla. 2002) ...... 10

*Kathrein v. City of Evanston, Ill.*
  636 F.3d 906 (7th Cir. 2011) .............................................................. 7

*Koronthaly v. L'Oreal USA, Inc.*
  2008 WL 2938045 (D.N.J. July 29, 2008), aff'd, 374 F. App'x 257 (3d Cir. 2010) .......... 9

*Lujan v. Defenders of Wildlife*
  504 U.S. 555 (1992) ............................................................................. 7

*Meaunrit v. Pinnacle Foods Grp. LLC*
    2010 U.S. Dist. LEXIS 43858 (N.D. Cal. May 5, 2010) ................................. 10

*Mednick v. Precor, Inc.*
    320 F.R.D. 140 (N.D. Ill. 2017) ....................................................... 13

*Mee v. IA Nutrition, Inc.*
    2015 WL 2251303 (N.D. Cal. May 13, 2105) ................................ 11

*Muir v. Playtex Prod., LLC*
    983 F. Supp. 2d 980 (N.D. Ill. 2013) ............................................ 14

*Mullins v. Direct Digital, LLC*
    795 F.3d 654 (7th Cir. 2015) ......................................................... 13

*Newman v. Metro. Life Ins. Co.*
    885 F.3d 992 (7th Cir. 2018) ......................................................... 12

*O'Shea v. Littleton*
    414 U.S. 488 (1974) ...................................................................... 15

*Oliveira v. Amoco Oil Co.*
    201 Ill. 2d 134 (2002) ................................................................... 13

*Payton v. Cty. of Kane*
    308 F.3d 673 (7th Cir. 2002) ........................................................... 6

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.*
    338 F.3d 773 (7th Cir. 2003) ........................................................... 3

*Rivera v. Wyeth-Ayerst Labs.*
    283 F.3d 315 (5th Cir. 2002) ........................................................... 9

*Steel Co. v. Citizens for a Better Envt.*
    523 U.S. 83 (1998) .......................................................................... 7

*Stemm v. Tootsie Roll Indus., Inc.*
    374 F. Supp. 3d 734 (N.D. Ill. 2019) ............................................ 12

*Tamburo v. Dworkin*
    601 F.3d 693 (7th Cir. 2010) ................................................... 3, 4, 5

*Terrazzino v. Wal-Mart Stores, Inc.*
    335 F. Supp. 3d 1074 (N.D. Ill. 2018) ......................................... 15

*Turek v. Gen. Mills, Inc.*
    662 F.3d 423 (7th Cir. 2011) ......................................................... 11

*United States v. Hays*
    515 U.S. 737 (1995) ........................................................................ 6

*Wallace v. Conagra Foods, Inc.*
    747 F.3d 1025 (8th Cir. 2014) ............................................................. 8

*Warth v. Seldin*
    422 U.S. 490 (1975) ......................................................................... 7

*Williams v. Purdue Pharma Co.*
    297 F. Supp. 2d 171 (D.D.C. 2003) ................................................... 9

*World-Wide Volkswagen Corp. v. Woodson*
    444 U.S. 286 (1980) ......................................................................... 4

## STATUTES & REGULATIONS

21 C.F.R. § 100.1(c)(4) .......................................................................... 11

21 C.F.R. § 165.110 ......................................................................... 10, 12

21 C.F.R. § 165.110 (b)(4)(iii)(A) .......................................... 10, 12, 13, 15

21 C.F.R. § 165.110(b)(4)(iii)(E)(14)(i)–(ii) ........................................ 11

21 U.S.C. § 343-1(a) .............................................................................. 11

Federal Rules of Civil Procedure, Rule 12(b)(1) ...................................... 6

Federal Rules of Civil Procedure, Rule 12(b)(2) ...................................... 3

Federal Rules of Civil Procedure, Rule 12(b)(6) .................................... 12

Illinois Consumer Fraud and Deceptive Business Practices Act
    815 ILCS 505/1 .............................................................................. 3

Illinois Consumer Fraud and Deceptive Business Practices Act
    815 ILCS 505/10b(1) ................................................................. 12, 15

## I.    INTRODUCTION

This is a classic "no injury" case.  Plaintiffs Lorenzo Colucci and Vienna Colucci (collectively "Plaintiffs") seek to use state consumer protection laws to regulate trace amounts of arsenic in Starkey Spring Water ("SSW").  Arsenic, however, is the twentieth most abundant element on earth and is found in most foods and beverages.  The Food and Drug Administration ("FDA") has set permissible levels for arsenic in bottled water, including spring water, at 10 parts per billion ("ppb"), which reflects the FDA's understanding that food and beverages are not entirely free from arsenic and that certain of these foods should have an upper limit for arsenic based on consumption patterns.  SSW complies with this FDA standard.

Plaintiffs do not allege that they, or anyone else, suffered any physical injury from consuming SSW.  Indeed, they do not allege that they or anyone else has suffered any adverse health effects at all.  Nor do they allege that SSW is inedible, subject to current recall, or in consistent violation of the applicable federal standards.  Simply put, Plaintiffs are not injured. Instead, Plaintiffs rely on the mere presence of trace amounts of arsenic in SSW to assert claims for false and misleading advertising, claiming they would not have purchased the product had they known it contained arsenic.  Plaintiffs, however, do not allege any facts as to the amount of arsenic in the SSW they purchased, or the circumstances or timing of their purchase.

Plaintiffs' case is fatally flawed in several respects that warrant dismissal.  *First*, defendant Whole Foods Market Services ("WFMS") is a Delaware company based in Texas that does not manufacture, market or sell SSW, and is thus not subject to personal jurisdiction. *Second*, Plaintiffs lack Article III standing because they fail to allege an injury-in-fact that is concrete and particularized to them.  *Third*, Plaintiffs' claims are preempted because Plaintiffs do not allege that the Consumer Reports (on which they rely to establish the presence of arsenic in SSW) used FDA-mandated procedures to test for arsenic and the applicable federal standards do not require an arsenic warning.  *Finally*, Plaintiffs failed to show that WFMS made any actionable statement about SSW or that reasonable consumers are likely to be deceived.

1

## II.    SUMMARY OF RELEVANT ALLEGATIONS & FACTS

**A.    Plaintiffs' Allegations.**

Plaintiffs sued WFMS for false and misleading advertising, relating to their manufacture, marketing and sale of SSW. (Doc. 1 at ¶¶1-6.) Plaintiffs claim they, and other consumers like them, were misled into purchasing SSW because "they were … led to believe [SSW] is the healthiest and least contaminated bottled water" when, in fact, it allegedly contains some of the highest levels of arsenic among bottled waters. (*Id.* at ¶¶5, 16-17.) Plaintiffs claim they believed they purchased "bottled water of the highest quality, safety and purity" based on WFMS' "reputation and long-running media campaign for sourcing and selling safe, wholesome and healthy products." (*Id.* at ¶¶1-2, 16-17, 20-21.) They also allege the SSW label and product descriptions claim the product as "pure" and "pristine." (*Id.* at ¶¶2, 6-7, 18, 21.)

Plaintiffs allege that SSW is contaminated because it contains trace amounts of arsenic approaching the federal threshold of 10 ppb; they also contend one bottle tested above the limit. (Doc. 1 at ¶¶2, 4.) Plaintiffs, however, do not allege that the SSW they purchased contained arsenic at levels anywhere near the federal limit. (Doc. 1 at ¶¶3-4, 16-17.) They also do not allege they tested, or had an independent third-party test, their SSW for arsenic.

Instead, Plaintiffs base their allegations of contamination on testing reported by two third-party consumer advocacy groups: Consumer Reports and the Center for Environmental Health. (Doc. 1 at ¶¶2, 5.) Consumer Reports "spot" tested four samples of SSW and allegedly found that one sample contained arsenic slightly above the 10 ppb limit (at 10.1 ppb) and the other three samples below the limit (ranging from 9.48 to 9.86). (*Id.* at ¶¶4, 22.) These tests were allegedly confirmed by the Center for Environmental Health. (*Id.* at ¶¶2, 22.) Plaintiffs do not allege that Consumer Reports or the Center for Environmental Health used FDA-approved testing methods. (*Id.* at ¶¶2, 4.) Plaintiffs also allege that WFMS conducted its own tests, and found the product contained less than the FDA 10 ppb arsenic threshold. (*Id.* at ¶32.)

Plaintiffs allege that neither they, nor their putative class of consumers, would have purchased SSW had they known that it contained trace amounts of arsenic. (Doc. 1 at ¶¶5, 16-

17, 34, 53.)  Plaintiffs do not allege that they, or any other SSW purchasers, suffered any health problems as a result of drinking the product.

**B.     Claims and Procedural History.**

Plaintiffs assert claims for unfair and deceptive advertising in violation of Illinois Consumer Fraud and Deceptive Practices Act, 815 Ill. Comp. Stat. 501/1, *et seq*. ("ICFA"), and "Similar Consumer Fraud Statutes." (Doc. 1 at ¶¶45-57.)  Plaintiffs bring these claims on behalf of themselves and a putative multi-state class of SSW purchasers in "Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington," or in the alternative, "[a]ll Illinois citizens who, within the applicable statute of limitations period until the date notice is disseminated, purchased [SSW] at Whole Foods in Illinois." (*Id.* at ¶36.)

After filing the Complaint, Plaintiffs were given the opportunity to conduct jurisdictional discovery and amend.  (Doc. 16, 21.)  Plaintiffs conducted jurisdictional discovery, dismissed an originally named defendant, yet chose to not file an amended complaint to name the entity which owns and operates the Whole Foods Market ("WFM") stores in Illinois or the entity that is responsible for the manufacture, distribution, marketing and sale of SSW.

### III.     LEGAL ARGUMENT

**A.     The Court Lacks Personal Jurisdiction Over WFMS.**

Federal Rules of Civil Procedure ("Fed. R. Civ. P.") Rule 12(b)(2) allows a defendant to challenge a complaint for lack of personal jurisdiction.  The determination of whether to exercise personal jurisdiction is a question of law.  *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010).  Plaintiff bears the burden of establishing that the Court has personal jurisdiction over each defendant and must rebut defendant's affidavits in opposition by submitting admissible evidence.  *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003).  WFMS challenges and does not admit the facts pled in the Complaint and thus Plaintiffs must set forth competent and admissible evidence establishing jurisdiction over WFMS.

**1.     Statutory and Constitutional Principles Governing Personal Jurisdiction.**

"Where no federal statute authorizes nationwide service of process, personal jurisdiction

3

is governed by the law of the forum state." *Tamburo*, 601 F.3d at 700. "[T]he Illinois long-arm statute permits the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause, 735 Ill. Comp. Stat. 5/2–209(c), so here the state statutory and federal constitutional inquiries merge." *Id.* at 700.

Due process requires that the defendant have sufficient minimum contacts with the forum such that the assertion of jurisdiction in that forum "'does not offend traditional notions of fair play and substantial justice.'" *Tamburo*, 601 F.3d at 700-01, (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). The minimum contacts requirement "protects the defendant against the burdens of litigating in a distant or inconvenient forum." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). Personal jurisdiction may be either general or specific. *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012). Neither type applies to WFMS.

### 2. WFMS Is Not Subject to the Court's General Jurisdiction.

General personal jurisdiction is a high threshold and exists where a defendant's business contacts with the forum state are so substantial, continuous and systematic that they "approximate physical presence." *Tamburo*, 601 F.3d at 701. The United States Supreme Court recently held that, absent an "exceptional case," a corporation is "at home" (and, therefore, subject to general jurisdiction) only in its state of incorporation and its principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). Thus, the defendant's affiliations with Illinois must be "so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Id.* (quoting *Goodyear Dunlop Tires Operations v. Brown*, 564 U.S. 915, 919 (2011)). This historically entailed contacts with the forum that include ownership of property, the maintenance of bank accounts, having employees, soliciting business, or having a designated agent in the state. *Abelesz v. OTP Bank,* 692 F.3d 638, 654–55 (7th Cir. 2012).

WFMS does not maintain any of these types of contacts with Illinois. WFMS is incorporated in Delaware, and has its principal offices in Austin, Texas. (*See* Horn Decl., ¶2.) It does not have any offices, bank accounts, employees nor real property in Illinois. (*Id.* ¶¶6-7.) It

is not qualified to conduct business (nor does it) in Illinois and does not have an agent for service in this State.  (*Id*. ¶2.)  WFMS simply does not have any relevant contacts, let alone the "continuous and systematic" contacts necessary to establish general personal jurisdiction.

### 3. WFMS Is Not Subject to the Court's Specific Jurisdiction.

"Specific personal jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Tamburo v. Dworkin*, *supra*, 601 F.3d at 702, (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

Plaintiffs allege WFMS designs and develops WFM's private label line of products, including SSW.  (Doc. 1 at ¶11.)  Not true.  SSW is not a WFM private label product.  (Horn Decl. ¶10.)  It is a product of Allegro Coffee Company ("Allegro Coffee").[1]  (*Id.* ¶10.)  Further, WFMS does not develop, manufacture, distribute or sell any WFM's private label products.  (*Id.* ¶9.)  WFMS also does not own or operate the WFM stores in Illinois, or any other state.  (*Id.* ¶8.)

Plaintiff next alleges WFMS controls decisions relating to the nation-wide marketing and advertising of WFM's private label products.  (Doc. 1 at ¶11.)  But, again, not true.  WFMS works as the administrative arm of the WFM family of companies, providing accounting, legal and other administrative services to the WFM operating entities.  (Horn Decl. ¶¶3-4.)  These administrative services include some work in marketing WFM's private label products.  (*Id.* at ¶11.)  SSW, however, is not a WFM private label product and WFM Service is not involved and does not control the marketing and advertising of SSW.  (*Id.* at ¶11.)

WFMS is responsible for the content and design of WFM's national website.  (Horn Decl. ¶11.)  But, again, these services are rendered in Texas and, given the website's broad and indiscriminate scope, are not targeted at Illinois.  (*Id*.)  Further, consumers cannot directly

---

[1]  Plaintiffs' counsel are well aware of this fact since they have conducted jurisdictional discovery and named Allegro Coffee as a defendant in this same case pending in California, entitled *Berke v. Whole Foods Market California, Inc., et al.*, Central District of California, Case No. 19-cv-07471-PSG (Ksx).

purchase SSW from the website.[2] (*Id.* ¶12.) Thus, Plaintiffs' claims do not arise out of WFMS's website operation, which is an insufficient basis for exercising personal jurisdiction.

> The interactivity of a website is also a poor proxy for adequate in-state contacts. We have warned that "[c]ourts should be careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state, even if that site is 'interactive.' " [Citation] This makes sense; the operation of an interactive website does not show that the defendant has formed a contact with the forum state. And, without the defendant's creating a sufficient connection (or "minimum contacts") with the forum state itself, personal jurisdiction is not proper.

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc*., 751 F.3d 796, 803 (7th Cir. 2014), as corrected (May 12, 2014) (internal citations omitted).

WFMS is also responsible for developing and executing WFM's national brand advertising which allegedly informs consumers that WFM has "strict quality standards" that "aren't standard anywhere else" and sell the "Highest Quality Natural and Organic Foods." (Doc. 1 at ¶¶1, 3, 20, 21(a)-(d)). As with WFMS' operation of the website, these advertising services were rendered in Texas and are not directed at Illinois. (Horn Decl. ¶ 13.) None of WFMS' national advertising mentions SSW, and Plaintiff's claims do not arise from this activity. In short, Plaintiffs' claims cannot and do not arise out of WFMS' marketing work nor its operation of the WFM national website and these acts are not a basis for specific jurisdiction.

**B.    Plaintiffs Lack Article III Standing.**

Standing is a jurisdictional issue and may properly be addressed through a pleading challenge under Fed. R. Civ. P. 12(b)(1). *See United States v. Hays*, 515 U.S. 737, 742 (1995); *Payton v. Cty. of Kane,* 308 F.3d 673, 681-82 (7th Cir. 2002). To establish standing, a plaintiff has the burden to demonstrate: "(1) that [the plaintiff has] suffered an injury in fact (2) that is fairly traceable to the action of the defendant and (3) that will likely be redressed with a

---

[2] The website does contain a link (entitled "Order Online") that transfers consumers to Amazon's website where they can review and purchase items offered for sale by Amazon. WFMS, however, is not involved in those sales and does not operate or manage Amazon's website.

favorable decision." *See Kathrein v. City of Evanston, Ill.*, 636 F.3d 906, 914 (7th Cir. 2011)
(quoting *Books v. City of Elkhart, Ind.*, 235 F.3d 292, 299 (7th Cir. 2000)). Allegations of
possible future injury are insufficient. Rather, "injury in fact" demands Plaintiffs demonstrate
that they suffered a harm that is concrete and particularized, "not conjectural or hypothetical."
*Steel Co. v. Citizens for a Better Envt.*, 523 U.S. 83, 102-03 (1998) (internal quotations and
citations omitted). A particularized injury means the "injury must affect the plaintiff in a
personal and individual way."[3] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992)

Plaintiffs' Complaint fails to satisfy the first element (injury-in-fact) for two reasons.
*First*, Plaintiffs have not alleged that the SSW they purchased contained arsenic at a level
approaching or slightly above the 10-ppb limit allowed by the FDA. Thus, they have not alleged
an injury that affects them in a personal and individual way. *Second*, the Complaint alleges a
"no-injury" product defect case masquerading as a consumer fraud suit.

### 1. Plaintiffs Fail to Allege Any Concrete and Particularized Injury.

The Complaint fails to establish Plaintiffs' Article III standing because it does not allege
an injury-in-fact that is concrete and particularized to Plaintiffs. The Complaint alleges that
SSW is contaminated because it contains arsenic at levels approaching or slightly above the
federal limit of 10 ppb. (Doc. 1 at ¶¶2, 4.) Plaintiffs, however, do not allege that the SSW they
purchased contained arsenic at levels anywhere near the federal limit. (*Id.* at ¶¶3-4, 16-17.)
They also do not allege that they, or a third-party, tested their bottle(s) of SSW.

Having not conducted their own testing, Plaintiffs base their allegations of contamination
on testing reported by a consumer advocacy group, Consumer Reports.[4] (Doc. 1 at ¶4.)

---

[3] When a class action plaintiff lacks standing, he cannot assert it through the claims of absent putative
class members because there must be a "distinct and palpable injury to himself, even if it is an injury
shared by a large class of other potential litigants." *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

[4] Plaintiff also claims third-party Center for Environmental Health ("CEH") tested and confirmed SSW
contains high levels of arsenic. (Comp. ¶¶2, 4, 22.) These are entirely conclusory and unsubstantiated
allegations. The Complaint does not allege the level of arsenic CEH's testing reported (which were likely
below the federal limit), how many bottles were tested, when or where those samples were collected or
how the testing was conducted. (*See id.*)

Consumer Reports "spot" tested four samples of SSW and allegedly found that one sample contained arsenic slightly above the 10-ppb limit (at 10.1 ppb) and the other three samples slightly below the limit (ranging from 9.48 to 9.86). (*Id.* at ¶¶4, 22.) Plaintiffs also allege that WFM conducted its own tests, but found the product contained less that than 10-ppb of arsenic. (*Id*. at ¶32.) These facts, however, do not establish that SSW consistently or even regularly exceeds the federal limit for arsenic in bottled water.

Moreover, Plaintiffs cannot rely on generalized allegations of arsenic in bottles of SSW they did not purchase to assert a concrete and particularized injury to themselves. *See Wallace v. Conagra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014) ("Without any particularized reason to think the consumers' own packages of Hebrew National beef actually exhibited the alleged non-kosher defect, the consumers lack Article III standing..."); *Gaminde v. Lang Pharma Nutrition, Inc.*, No. 18cv300-GLS-DEP, 2019 WL 1338724, at *3 (N.D.N.Y. Mar. 25, 2019) ("it is speculation to allege that because two CVS Krill Oils bottles in a USDA study were found to have less than the stated amount of Omega-3 Krill Oil, the bottle that [plaintiff] purchased must as well.")

### 2. Plaintiffs' Allegations of Economic Injury Fail to Establish Injury in Fact.

Plaintiffs do not allege any personal injury caused by their purchase and consumption of SSW. Their alleged injury is solely a claim for economic injury; specifically, that neither they, nor their putative class of consumers, would have purchased SSW had they known that it contained trace amounts of arsenic. (Doc. 1 at ¶¶5, 16-17, 34, 55.)

Cases involving trace amounts of arsenic and lead in fruit juice have rejected the same standing allegations and arguments made here. For example, *In re Fruit Juice Prods. Mktg. and Sales Practices Litig.* ("*In re Fruit Juice*"), 831 F. Supp. 2d 507, 508-09 (D. Mass. 2011) plaintiff consumers alleged defendants marketed their fruit juice as safe for consumption, especially by children, but did not disclose the presence of lead, which is associated with a variety of health risks, in the products' promotional materials or on their labels. *Id*. at 509. Plaintiffs alleged, *inter alia*, they suffered an economic injury because they would not have

8

purchased the contaminated juice products if they had known they contained lead. *Id.* at 512. The court rejected this argument:

> Because Plaintiffs are unable to show that *any* actual harm resulted from consumption of the fruit juice products, their allegations of 'economic' injury lack substance. The fact is that Plaintiffs paid for fruit juice, and they received fruit juice, which they consumed without suffering harm. The products have not been recalled, have not caused any reported injuries, and do not fail to comply with any federal standards. The products had no diminished value due to the presence of the lead. Thus, Plaintiffs received the benefit of the bargain, as a matter of law, when they purchased these products.

*Id.* at 512.[5]

Courts routinely follow this reasoning to deny Article III standing based on allegations of harmful ingredients in otherwise non-defective products. *See e.g., Hughes v. Chattem, Inc.,* 818 F. Supp. 2d 1112, 1118-20 (S.D. Ind. 2011) (hexavalent chromium in dietary supplement); *Frye v. L'Oreal USA, Inc.*, 583 F. Supp. 2d 954, 957-8 (N.D. Ill. 2008) (lead in lipstick); *Boysen v. Walgreens, Inc.*, No. 11-cv-06262-SI, 2012 WL 2953069, at *7(N.D. Cal. Jul. 19, 2012) (lead and arsenic in fruit juice); *Herrington v. Johnson & Johnson Consumer Cos.*, No. 09-cv-1597-CW, 2010 WL 3448531, at *4 (N.D. Cal. Sept. 1, 2010) (carcinogens in bath products); *Koronthaly v. L'Oreal USA, Inc.,* No. 07-cv-5588 (DMC), 2008 WL 2938045, at *1 (D.N.J. July 29, 2008), aff'd, 374 F. App'x 257 (3d Cir. 2010) (lead in lipstick).

The same is true here. Plaintiffs were not injured by consuming their SSW and have not alleged any other consumers have been injured by it. They also have not alleged a current recall of the product or alleged facts establishing that SSW violates or consistently exceeds the federal limit of 10-ppb for arsenic in bottled water. (Doc. 1 at ¶¶4, 22, 32.) Moreover, just like the plaintiffs in *Frye, Koronthaly,* and *Hughes* there is no observable economic consequence from

---

[5]  The court further noted that several other courts addressing similar "benefit of the bargain" arguments agree "that plaintiffs who have not been injured by an allegedly defective product generally do not have standing to sue the product's manufacturer." *In re Fruit Juice*, 831 F. Supp. 2d at 512 (citing *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315 (5th Cir. 2002) (plaintiffs lack standing because they did not allege they were harmed by using recalled drug), and *Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171 (D.D.C. 2003) (plaintiffs lack standing because they failed to allege ineffective pain relief or other personal injury resulting from ingesting drug)).

Plaintiffs' subjective disappointment that the water they purchased and consumed may have contained trace amounts of arsenic within federal standards because they fail to allege they could purchase some other spring water that does not contain any arsenic for less money.[6]

Finally, courts have denied standing in cases involving exposure to trace amounts of other allegedly harmful substances that caused no injury to plaintiffs, especially where, as here, the products complied with federal standards. *See, e.g., Iberville Parish Waterworks Dist. No. 3 v. Novartis Crop Prot., Inc.*, 45 F. Supp. 2d 934, 938-42 (S.D. Ala. 1999), *aff'd*, 204 F.3d 1122; *Meaunrit v. Pinnacle Foods Grp. LLC*, No. C 09-04555 CW, 2010 U.S. Dist. LEXIS 43858 (N.D. Cal. May 5, 2010); *Emerald Coast Utils. Auth. v. 3M Co*., 746 F. Supp. 2d 1216, 1231-32 (N.D. Fla. 2010); *Jacobs v. Osmose, Inc.*, No. 01-944-CIV, 2002 U.S. Dist. LEXIS 1926, at *18-19 (S.D. Fla. 2002).

### C.     Plaintiffs' Claims Should be Dismissed Because They Are Expressly Preempted.

Even if Plaintiffs had standing and could plead injury, their state law claims are preempted by federal law.  SSW is labeled and sold as bottled "spring water."  (Comp. ¶6.)  The FDA under the Federal Food, Drug and Cosmetic Act ("FDCA"), as amended by the Nutritional Labeling and Education Act ("NLEA") regulates "spring water" as bottled water and has set a standard of identity.[7]  *See* 21 C.F.R. 165.110.  The federal standards applicable to bottled water set an upper limit of 10 ppb for arsenic and establish that "[a]rsenic shall be measured" using one of two testing methods.  *See* 21 C.F.R. § 165.110 (b)(4)(iii)(A) (arsenic not to exceed .010 milligrams per liter, i.e., 10 ppb).

Plaintiffs' claims are preempted because: (1) they seek a label warning regarding the presence of arsenic, which is not required under the federal standards (Doc. 1 at ¶24.), and (2)

---

[6] The Complaint does baldly allege that Plaintiff paid a price premium for his SSW.  (Doc. 1 at ¶5.)  It, however, does not allege that this supposed price premium is somehow based on arsenic levels.  To the contrary, Plaintiff claims the premium is merely the result of purchasing the product at a Whole Foods Market.  (*Id.* at ¶20.)

[7]  A "standard of identity" is a regulation in which the FDA fixes the ingredients of, and consequently the definition of, a food.  *See 62 Cases, More or Less, Each Containing Six Jars of Jam v. U.S.*, 340 U.S. 593, 598 (1951).

Plaintiffs do not allege that Consumer Reports, on whose testing the Complaint relies to establish SSW is allegedly "contaminated," used the FDA-approved testing methods.  (*Id*. at ¶¶2, 4).

NLEA, enacted in 1990, amended the FDCA creating uniform national standards regarding the labeling of food.  *Turek v. Gen. Mills, Inc*., 662 F.3d 423, 426 (7th Cir. 2011). To achieve its goal of uniformity, Congress included an express preemption provision in the NLEA that preempts any state law requirement that is "not identical to" the federal requirement.  21 U.S.C. § 343-1(a).  The term "not identical" under NLEA means "that the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food [that] …[a]re not imposed by or contained in the applicable" federal statute or regulation.  21 C.F.R. § 100.1(c)(4).  Consumer protection lawsuits are subject to dismissal where they seek to impose any new or different requirements from the applicable federal standards.  *See Chicago Faucet Shoppe, Inc. v. Nestle Waters N. Am. Inc.,* 24 F. Supp. 3d 750, 759 (N.D. Ill. 2014) (requiring disclosure that purified water was from tap rather than other sources is expressly preempted as beyond the NLEA's disclosure requirements); *In re PepsiCo, Inc., Bottled Water Mktg. & Sales Practices Litig.*, 588 F. Supp. 2d 527, 536-37 (S.D.N.Y. 2008).

Here, Plaintiffs rely on spot testing performed by Consumer Reports to establish that WFMS sells SSW that contains arsenic in excess of the federal limit.  (Comp. ¶¶2, 4.)  The NLEA, however, sets detailed requirements for how arsenic shall be measured in bottled water. *See* 21 C.F.R. § 165.110(b)(4)(iii)(E)(14)(i)–(ii).  Plaintiffs do not allege that Consumer Reports used the FDA-mandated testing protocols to test SSW, and thus their "'state law claim that seeks to establish a [FDA] violation of such regulation by a different methodology is preempted.'" *In re: Whole Foods Market, Inc.*, 163 F. Supp. 3d 385, 392 (W.D. Tex. 2016) (quoting *Mee v. IA Nutrition, Inc.*, No. C-14-5006 MMC, 2015 WL 2251303, at *4 (N.D. Cal. May 13, 2105)).

Moreover, Plaintiffs claim they were misled by WFMS' failure to warn about or disclose the presence of arsenic on the SSW label.  (Doc. 1 at ¶¶24, 56.)  The standards do not require that bottled water labels disclose or warn about the presence of arsenic at levels below, such as

11

here, the federal limit. *See* 21 C.F.R. §§ 165.110*,* 165.110(b)(4)(iii)(A). WFMS' conduct,

therefore, does not violate the FDCA, as amended by the NLEA and Plaintiffs' demand for an

arsenic warning is preempted.

**D.     The Complaint Fails to Allege Plausible Claims for False or Misleading Advertising.**

A complaint must be dismissed under Fed. R. Civ. P. 12(b)(6) unless it "contain[s]

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Ad. Corp. v. Twombly,* 550 U.S. 544,

570 (2007)). At the threshold, the Complaint fails because (1) it does not allege any false or

misleading statements specific to SSW; (2) no reasonable consumer would be deceived by non-

disclosure regarding amounts of arsenic below the FDA limit; and (3) under 815 Ill. Comp. Stat.

505/10b(1), WFMS is not liable for conduct specifically permitted by the FDA.

**1.     The Complaint Does Not Allege an Actionable Statement Specific to SSW.**

To state a claim for deceptive advertising under the ICFA, Plaintiff must demonstrate that

"(1) the defendant undertook a deceptive act or practice; (2) the defendant intended that the

plaintiff rely on the deception; (3) the deception occurred in the course of trade and commerce;

(4) actual damage to the plaintiff occurred; and (5) the damage complained of was proximately

caused by the deception." *Newman v. Metro. Life Ins. Co*., 885 F.3d 992, 1000 (7th Cir. 2018)

"[A] court may dismiss an ICFA claim at the pleading stage if the statement is 'not misleading as

a matter of law.'" *Stemm v. Tootsie Roll Indus., Inc*., 374 F. Supp. 3d 734, 740 (N.D. Ill. 2019).

Plaintiffs cannot rely on any statements contained on SSW bottles or on the SSW website

because these statements were made by Allegro Coffee, not WFMS. WFMS has no control over

SSW's labeling or advertising, and does not sell SSW to anyone. (Horn Decl. ¶¶8, 10.)

Tacitly conceding this deficiency, Plaintiffs claim WFMS alleged brand advertising for

"highest quality, safest, and most nutritious products to customers" led Plaintiffs, and other

consumers like them, to purchase SSW because "they were and still are led to believe [SSW] is

the healthiest and least contaminated bottled water." (Doc. 1 at ¶¶1, 3, 5, 16-17, 20-21.) The

Complaint, however, does not allege any statement by WFMS that SSW is the "safest" bottled

water or the "least contaminated." Reasonable consumers also do not rely on WFMS' general advertising about the WFM brand to form specific expectations regarding SSW's arsenic content. Indeed, Plaintiffs fail to allege any statement at all made by WFMS regarding SSW, other than operation of the WFM website which allows users to view SSW's label.

Even if Plaintiffs could demonstrate a connection between WFMS' statements and SSW, Plaintiffs cannot show that all purchasers of SSW were harmed "as a result" of WFMS' statements. *Oliveira v. Amoco Oil Co*., 201 Ill. 2d 134, 149–55 (2002) (plaintiff could not state a cause of action under ICFA when plaintiff could not allege that class was exposed to defendants' general reputation marketing). "Plaintiffs must be able to plead that class members were exposed to Precor's allegedly deceptive advertising. One cannot be deceived by what one did not see, and this personal exposure to the alleged misrepresentation is crucial under Illinois law." *Mednick v. Precor, Inc.*, 320 F.R.D. 140, 149–50 (N.D. Ill. 2017) (internal citations omitted).

Here, Plaintiffs are likewise prohibited from relying on any general marketing statements for the same reason. These alleged statements regarding WFM's "highest quality, safest, and most nutritious products" do not appear on SSW bottles and there is no way to determine whether all purchasers of SSW saw these statements. In fact, Plaintiffs never even allege they visited WFM's website, and thus cannot even allege with the requisite detail that they themselves were damaged by WFMS general marketing statements. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (ICFA plaintiffs must meet Rule 9(b) pleading standard).

**2.     Plaintiffs Have Not Shown A Reasonable Consumer Is Likely to Be Deceived.**

A deceptive act or practice under the ICFA is one that "creates a likelihood of deception or has the capacity to deceive." (*Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001). These factors are measured against the perception of a "reasonable consumer." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 673 (7th Cir. 2015).

Here, a reasonable consumer could not expect SSW to contain zero arsenic. The FDA has set an arsenic limit of 10-ppb in bottled water. 21 C.F.R. § 165.110(b)(4)(iii)(A). Plaintiffs have not alleged facts to establish that SSW consistently exceeds the allowable safety threshold

13

for arsenic in bottled water. To the contrary, the Complaint alleges that only one bottle of SSW allegedly tested above the federal limit. (Doc. 1 at ¶¶4, 22, 32.) Thus, there are no facts pled that support the allegation that reasonable consumers would not have purchased SSW had they known it contained arsenic, (see id. at ¶¶5, 34, 54), and certainly none showing that a significant portion of the general consuming public could be misled. Even the challenged "purity" statements,[8] (see id. at ¶6), cannot reasonably be understood as a promise that SSW is completely free of arsenic given it abundance in nature and the applicable federal limit.[9]

Further, Plaintiffs cannot rely on WFM's general reputation advertising for "highest quality" and "nutritious products" (Doc. 1 at ¶¶1, 3, 20, 21(a)-(d)) to argue these statements would lead consumers to form specific expectations about SSW's arsenic content because reasonable consumers would construe them as puffery.

"Puffing denotes the exaggerations reasonably expected of a seller as to the degree of quality of his or her product, the truth or falsity of which cannot be precisely determined. Puffing typically consists of 'subjective descriptions relating to quality,' such as 'high quality,' 'perfect,' and 'best.'" *Muir v. Playtex Prod., LLC*, 983 F. Supp. 2d 980, 989 (N.D. Ill. 2013) (internal citations omitted). "Puffing in the usual sense signifies meaningless superlatives that no reasonable person would take seriously, and so it is not actionable as fraud." *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 72–77 (2007).

Here, WFMS' marketing statements are generalized, vague and unspecific assertions, which should not be read as a promise, nor do they explicitly say that every single individual product sold at a WFM store is free of any or all defects. Further, none of these statements are specific to SSW and none of them (or anything like them) appear on SSW's label. They are puffery.

---

[8] Which appear on the SSW bottles and are thus statements attributable to Allegro Coffee, not WFMS.

[9] If Allegro Coffee is required to add specific arsenic disclaimers to SSW's labeling, is it also required to add such disclaimers to every product with naturally occurring federally approved arsenic levels? Short of WFM marketing "Arsenic-Free Rice," or "Grape Juice with 0% Arsenic," advertisements regarding a product's purity or quality are not actionable simply because the product contains trace amounts of arsenic below the federal limit.

3.      **Plaintiff's ICFA Claim is Barred by the FDA's Safe Harbor.**

Plaintiff is not entitled to bring ICFA claims based on acts "specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States." 815 Ill. Comp. Stat. Ann. 505/10b(1). "If the parties are doing something specifically authorized by federal law, section 10b(1) will protect them from liability under the [ICFA]." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 941 (7th Cir. 2001).

Because SSW complies with the FDA's comprehensive food safety and labeling regulations by arriving under the established arsenic limit deemed safe in bottled water – 10 ppb (21 C.F.R. § 165.110(b)(4)(iii)(A)) – Plaintiffs' ICFA claims are barred.

E.      **Plaintiffs do Not Have Standing to Obtain Injunctive Relief.**

"To state a claim for injunctive relief, plaintiff must allege that a defendant's conduct is likely to cause her harm in the future." *Terrazzino v. Wal-Mart Stores, Inc.*, 335 F. Supp. 3d 1074, 1087 (N.D. Ill. 2018). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974).

Here, Plaintiffs cannot obtain an injunction because they are already aware of WFMS' alleged deception and unlikely to be harmed by this alleged misrepresentation in the future. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740 (7th Cir. 2014) ("Since Camasta is now aware of JAB's sales practices, he is not likely to be harmed by the practices in the future.").

# IV.    CONCLUSION

For the foregoing reasons, defendant WFMS is not subject to this Court's personal jurisdiction, Plaintiffs lacks Article III standing and the Complaint fails to state a claim on which relief can be granted. Plaintiff was given the opportunity to amend and they chose not to do it. Thus, the Court should not now grant them leave.

15

Dated:  September 4, 2020          Respectfully submitted,


*/s/ J.T. Wells Blaxter*
J.T. Wells Blaxter
(admitted *pro hac vice*)
BLAXTER | BLACKMAN LLP
601 California Street, Suite 1505
San Francisco, CA 94108
Tel: (415) 500-7700
Email: wblaxter@blaxterlaw.com
     *and*
Danny Worker
LEWIS BRISBOIS BISGAARD &
SMITH LLP
550 West Adams Street, Suite 300
Chicago, IL 60661
Tel: (312) 407-9921
Email: Dan.Worker@lewisbrisbois.com
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of September, 2020, a true and correct copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT was filed electronically with the Clerk of the Court using the ECF system, which automatically sends e-mail notification of such filing to the following:

Elaine Ryan
Bonnett Fairbourn Friedman & Balint, PC
2325 E. Camelback Rd.
Suite 300
Phoenix, AZ 85016
(602) 274-1100
Email: eryan@bffb.com

Carrie Ann Laliberte
Bonnett Fairbourn Friedman & Balint PC
2325 E. Camelback Rd.
Suite 300
Phoenix, AZ 85016
(602) 274-1100
Email: claliberte@bffb.com
PRO HAC VICE
ATTORNEY TO BE NOTICED

Laurence Paskowitz
Paskowitz Law Firm, PC
67-87 Booth Street
Suite 2C
Forest Hills, NY 11375
(212) 685-0969
Email: lpaskowitz@pasklaw.com
PRO HAC VICE
ATTORNEY TO BE NOTICED

Patricia N Syverson
Bonnett Fairbourn Friedman & Balint, Pc
600 West Broadway
Suite 900
San Diego, CA 92101
619-798-4593
Email: psyverson@bffb.com
ATTORNEY TO BE NOTICED

17

Roy L. Jacobs
Roy Jacobs & Associates
420 Lexington Ave.
Suite 2440
New York, NY 10170
212-867-1156
Email: rljacobs@pipeline.com
PRO HAC VICE
ATTORNEY TO BE NOTICED

/s/ J.T. Wells Blaxter